UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

In re:                                                    CASE NO. 11-00627
FOREST PACKING COMPANY                                    CHAPTER 11

   Debtor

## JOINT MOTION OF DEBTOR IN POSSESSION AND IMPERIAL CREDIT CORPORATION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 363(b) 363(e), 362(d) AND 362(f) AUTHORIZING THE DEBTOR TO MAKE CERTAIN PAYMENTS UNDER INSURANCE PREMIUM FINANCE CONTRACT AND FOR EXPEDITED HEARING

Forest Packing Company, the above-captioned debtor and debtor in possession (the "Debtor") and Imperial Credit Corporation ("ICC"), a secured creditor in this case, hereby move under sections 105(a) and 363(b) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), for an order (i) directing the Debtor to pay the final monthly installment under an insurance premium finance contract with ICC, (ii) authorizing retroactively the Debtor's post-petition payment of one monthly installment under the same contract, and (iii) granting ICC relief from the Bankruptcy Code's automatic stay provisions in the event that the Debtor does not pay the amount referred to in (i) above. The movants seek expedited treatment of this motion, and respectfully represent as follows:

1.

The Debtor commenced this case on February 21, 2011 (the "Petition Date") by filing a petition for reorganization relief under Chapter 11 of the Code, and is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

377567.2

2.

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157(b) and 1334(b) and may grant the relief requested pursuant to sections 105(a), 363(b), 363(e), 362(d) and 362(f) of the Bankruptcy Code.

3.

Prior to the Petition Date, the Debtor procured insurance policies (the "Insurance Policies") and financed the related premiums with ICC pursuant to a standard form of commercial financing contract. A true and correct copy of that contract, dated May 5, 2010 and styled "Premium Finance Agreement, Disclosure Statement and Security Agreement," is attached to this Motion as Exhibit A and referred to in this Motion as the Premium Finance Contract.

4.

As security for the total amounts payable due under the Premium Finance Contract, including ICC's attorneys' fees and costs, the Debtor assigned to ICC, among other things, any and all unearned premiums and loss payments which reduce those unearned premiums under the Insurance Policies (collectively, the "Collateral"). Premium Finance Agreement, paragraphs 8 and 16.

5.

As further security to protect ICC's interests, the Debtor appointed ICC as its attorney-in-fact to cancel the Insurance Policies, and to receive all sums assigned to it, if a payment default occurred or the Debtor transferred the relevant insurance policies. Premium Finance Agreement, paragraphs 2 and 3.

377567.2

6.

ICC's security interest in the Collateral is perfected by virtue of section 81-21-1 of the

Mississippi Code, which provides:

> Section 81-21-1. Filing of agreement unnecessary to perfect
> interest.
>
> No filing of the premium finance agreement shall be necessary to
> perfect the validity of such agreement as a secured transaction as
> against creditors, subsequent purchasers, pledgees, encumbrancers,
> trustees in bankruptcy or any other insolvency proceeding under
> any law or anyone having the status or power of the
> aforementioned or their successors or assigns.

7.

Payments under the Premium Finance Agreement are due monthly on the first day of

each month, in the amount of $22,492.28. As of the Petition Date, the Debtor had not paid the

monthly payment due under the Premium Finance Agreement on February 1, 2011. After the

Petition Date, on March 2, 2011, the Debtor made a monthly payment of $22,492.28, which ICC

applied to the February, 2011 payment. The final monthly payment under the Premium Finance

Agreement was due on March 1, 2011 and remains unpaid.

8.

Maintaining the Insurance Policies in effect is critical to the Debtor's ability to operate its

business and to satisfy its obligations as a debtor in possession pursuant to this court's

regulations. *See* Requirements for Debtor-In-Possession – Chapter 11 Cases. (Docket No. 4,

Section B.5).

9.

The Debtor concedes that its payment defaults under the Premium Finance Contract

afford ICC grounds for obtaining relief from the automatic stay provisions of Bankruptcy Code

377567.2

section 362, including immediate relief under section 362(f), to permit ICC to exercise its right to terminate the Insurance Policies and collect the related unearned premiums. The Debtor also concedes that the payment it seeks to make to ICC would be payable under Bankruptcy Code section 363(e) as adequate protection of ICC's interest in the Collateral.

10.

Termination of the Insurance Policies would threaten the Debtor's ability to reorganize its business, pay its creditors, and protect other parties with interests in its estate. Moreover, forcing ICC to seek relief from the automatic stay and adequate protection would subject the Debtor's estate to ICC's claim for its costs to prosecute a motion seeking such relief. To avoid these adverse consequences, the Debtor desires to pay the final installment of the Premium Finance Contract and seeks an order (i) authorizing it to do so, (ii) granting ICC relief from the automatic stay so as to permit it to immediately cancel the Insurance Policies and collect the Collateral if the Debtor fails to do so, and (iii) authorizing retroactively the Debtor's prior post-petition payment of the February installment under the Premium Finance Contract.

**WHEREFORE,** the Debtor and ICC respectfully request that the court enter an order authorizing (i) the Debtor to pay the final monthly installment under the Premium Finance Contract, and (ii) approving retroactively the Debtor's post-petition payment of the February 2011 installment, and granting them such other relief as is just.

377567.2

THIS the 12th day of April, 2011.

Respectfully Submitted:

Craig M. Geno, MSB 4793
Harris Jernigan & Geno, PLLC
587 Highland Colony Pkwy.
PO Box 3380
Ridgeland, MS 39157
Telephone: (601) 427-0048
Facsimile: (601) 427-0050
Email: cmgeno@hjglawfirm.com
Attorneys for FOREST PACKING COMPANY,
Debtor and Debtor in Possession

Brad J. Axelrod, LA Bar Roll # 24286
McGlinchey Stafford, PLLC
One American Place, 14th Floor
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
Facsimile: (225) 343-3076
Email: baxelrod@mcglinchey.com
Attorneys for IMPERIAL CREDIT
CORPORATION

377567.2

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission and/or U. S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Ronald McAlpin, Esq.
Office of the United States Trustee
Ronald.McAlpin@usdoj.gov

THIS, the _12th_ day of April, 2011.

_____
Craig M. Geno

377567.2

MAY. 5. 2010  2:58PM    BARKSDALE BONDING & INSURANCE                    NO. 0845   P. 1



**PREMIUM FINANCE AGREEMENT**
**DISCLOSURE STATEMENT**
**AND SECURITY AGREEMENT**

877-902-4242    33-021-001496-4

101 Hudson Street, Jersey City, NJ 07302
1001 Winstead Drive, Suite 500, Cary, NC 27513
45 East River Park Place West, Suite 308, Fresno, CA 93720

| | | | | |
|---|---|---|---|---|
| A | TOTAL PREMIUMS | $ | 275,251.50 | **BORROWER / INSURED (The "Insured")** (Name, Address and Telephone Number)   Acct. No. |
| B | CASH DOWN PAYMENT REQUIRED | $ | 55,038.58 | Lady Forest Farms Inc.   ladyf<br>PO Drawer D |
| C | AMOUNT FINANCED (The Amount of Credit Provided to Insured or on its behalf) | $ | 220,212.92 | Forest                      MS        39074<br>E-Mail Address (optional) |
| D | FINANCE CHARGE (Dollar amount credit will cost) | $ | 4,709.88 | ANNUAL PERCENTAGE RATE ____ 4.84 % (Cost of Credit figured as a yearly rate) |

| PAYMENT SCHEDULE | | | | | | |
|---|---|---|---|---|---|---|
| | | Amount of Each Payment | Number of Payments | | | 1st Payment Due |
| | | | Annual | Qtrly | Mthly | |

| | | | | | | | Final Payment Due |
|---|---|---|---|---|---|---|---|
| E | FLORIDA DOCUMENTARY STAMP TAX | $ | 0.00 | | | | |
| F | TOTAL PAYMENTS (Amounts which will have been paid after making all scheduled payments) | $ | 224,922.80 | 22,492.28 | | | 10  06/01/2010  03/01/2011 |

## SEE PAGE 3 FOR SCHEDULE OF FINANCED POLICIES

AGREEMENT OF INSURED (JOINT AND SEVERAL IF MORE THAN ONE)
THE UNDERSIGNED INSURED:

1. In consideration of the premium payments being financed and, if applicable, down payment being advanced by Premium Financing Specialists of the South, Inc. ("LENDER") to the insurance companies listed on the SCHEDULE OF FINANCED POLICIES, or their representative, promises to pay to the order of LENDER the TOTAL OF PAYMENTS to be made in accordance with the PAYMENT SCHEDULE, and if applicable, the amount of any down payment advanced by LENDER, subject to the provisions set forth in this Agreement.

2. a. Irrevocably appoints LENDER Attorney-in-Fact with full authority, in the event of default, to (i) cancel the said policies in accordance with the provisions herein, (ii) receive all sums assigned to LENDER and (iii) execute and deliver on behalf of the undersigned all documents, forms and notices relating to the insurance policies listed on the SCHEDULE OF FINANCED POLICIES in furtherance of this Agreement (Clauses (ii) and (iii) not applicable in Florida).
   b. If there is an amount listed as "Brokers Fee" in the Schedule of Policies, this fee is charged under Section 2119 of the New York Insurance Law or the Law, if any, of the state in which insured lives. This fee is charged for obtaining and servicing the Policy for where the risk to be insured under the Policy resides (Not applicable in Florida, Virginia, Maryland, Massachusetts or North Carolina).
   c. A fee of $ _____ none _____, which is not being financed, has been charged under the provisions of these Laws. If none has been charged, the word "none" is shown (Not applicable in Florida, Virginia, Maryland, Massachusetts or North Carolina).

### INSURANCE PREMIUM FINANCE AGREEMENT NOTICE

NOTICE: 1. Do not sign this Agreement before you read it or if it contains any blank spaces. 2. You are entitled to a complete filled-in copy of this agreement. 3. Under the law, you have the right to pay off in advance the full amount due and under certain conditions obtain a partial refund of the service charge. 4. Keep your copy of this Agreement to protect your legal rights.

NOTICE: See Pages 2 and 3 For Additional Important Information.

THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON PAGES 2 AND 3

5/5/10
DATE                 SIGNATURE (AND TITLE IF INSURED IS A BROKER)
                     BROKER ON THEIR BEHALF (to extent permitted by Law)

PFSBxxx(2110)

AGENT OR BROKER    Barksdale Bonding and Insurance, Inc.
BUSINESS ADDRESS

Regions Insurance Inc dba
P.O. Box 13389

Jackson                              MS  39236

TEL NO./E-MAIL ADDRESS  601-981-6700

The Undersigned Agent or Broker:

1. Represents and warrants as follows: (a) to the best of the undersigned's knowledge and belief, the insured's signature is genuine or, to the extent permitted by applicable Law, the undersigned Agent or Broker has been authorized by the insured to sign this Agreement on their behalf, (b) the insured has received a copy of this Agreement, (c) the scheduled Policies are in full force and effect and the premiums indicated therefore are correct, (d) the insured may cancel all scheduled policies immediately upon request, (e) none of the Policies scheduled in the Agreement are non-cancelable, and (f) the down payment as indicated in Box "B" and installments totaling _____ have been collected and are being retained by us.

2. Upon cancellation of any of the scheduled Policies, the undersigned Agent or Broker agrees upon demand to pay to LENDER or its assigns their commission on any unearned premiums applicable to the cancelled Policies.

THE AGENT OR BROKER AGREES TO THE
PROVISIONS ABOVE AND ON PAGE 3

5/5/10
DATE          SIGNATURE AND TITLE OF AGENT OR BROKER

Page 1 of 3

MAY 05 2010 15:03

EXHIBIT
tabbies
"A"

**ADDITIONAL AGREEMENTS OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)**

Cancellation. After the occurrence of a default in the payment of any money due the LENDER, or a default consisting of a transfer to a third party of any of the scheduled policies, LENDER may request cancellation of the insurance policies listed in the schedule upon expiration of 10 days written notice of intent to cancel (13 days in New York, 15 days in Pennsylvania), provided said default is not cured within such period, and LENDER may proceed to collect the entire unpaid balance due hereunder or any part thereof by appropriate legal proceedings. If any default results in the cancellation of the Policy, insured agrees to pay a cancellation charge in accordance with applicable law (Maryland – 5% of delinquent installment not to exceed an amount equal to the difference between the Late Charge and $100; North Carolina – None; Florida – None; Virginia – None).

4.  Money Received After Cancellation. Any payment received after policy cancellation may be credited to the indebtedness due hereunder without any liability or obligation on the part of LENDER to request reinstatement of such cancelled policy. Any sum received from an insurance company shall be credited to the balance due hereunder; any surplus shall be paid over to the insured; in case of deficiency, the insured shall pay the same. (Maryland – LENDER may not collect from insured any amount less than $5 after cancellation).

5.  Application of Payments. If applicable law permits, all payments received by LENDER will be applied to the oldest invoice first. Any remaining amounts will be applied to late fees and other charges (if applicable), the remainder (if any) would be applied to any other outstanding amounts.

6.  Returned Check Charge. If any payment made by check is returned because the insured had no account or insufficient funds in the payor bank, insured will be charged the maximum fee, if any, permitted under applicable law (Maryland – $25; Florida – $15; Virginia – $20).

7.  Default. If any of the following happens: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement, insured will be in default; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. Clauses (b) and (c) not applicable in Florida, Virginia, Maryland or North Carolina.

8.  Security. To secure payment of all amounts due under this Agreement, insured assigns LENDER a security interest in all right, title and interest to the Policy, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under the Policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any return of the premium for the Policy, and (c) dividends which may become due insured in connection with the Policy.

9.  Right to Demand Immediate Payment in Full. At any time after default, LENDER can demand and have the right to receive immediate payment (except to the extent otherwise provided by applicable law, in which case LENDER will have the right to receive such payment in accordance with such law) of the total unpaid balance due under this Agreement even if LENDER has not received any refund of unearned premium.

10. Warranties. Insured warrants to LENDER (a) to have received a copy of this Agreement and (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured. The insured represents that it is not presently the subject of or in contemplation of a proceeding in bankruptcy, receivership, or insolvency, or if it is a debtor in bankruptcy, the Bankruptcy Court has authorized this transaction.

11. Early Payment. At any time, insured may pay the whole amount still unpaid. If insured pays the full amount before it is due, insured will be given a refund for the unearned Finance Charge computed by the method of refund as required by applicable law.

12. Assignments. Insured may not assign the Policy or this Agreement without LENDER's written consent. However, insured does not need LENDER's written consent to add mortgagees or other persons as loss payees. LENDER may transfer its rights under this Agreement to anyone without insured's consent. All of LENDER's rights shall inure to the benefit of LENDER's successors and assigns.

13. Collection. If money is due and insured fails to pay, LENDER may collect the unpaid balance from insured without recourse to the security interest granted under this Agreement.

14. Late Charges. Upon default in payment of any installments for not less than five days (7 day in Virginia or such greater number of days required by applicable law), insured agrees to pay a late charge in accordance with applicable law. In no event shall such late charge exceed a maximum of 5% of such installment (greater of $25 or 1.5% in New Jersey; 5% in Massachusetts; $100 max in Maryland; greater of $10 or 5% in Florida).

15. Finance Charge. The finance charge begins to accrue from the effective date of this Agreement or the earliest inception date of the Insurance Policy(ies) listed on the Schedule of Policies, whichever is earlier. If LENDER terminates this Agreement due to a default, insured will pay interest on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation and from said date until insured pays the outstanding indebtedness in full to LENDER. To the extent permitted by applicable law, the Finance Charge may include a nonrefundable agreement charge not to exceed $20 ($10 in DE, PA and NY; $12 in NJ; $15 in NC, RI and VA; $16 in MA; $20 in FL).

16. Attorney's Fees. If LENDER hires an attorney (which is not a salaried employee) to collect any money insured owes under this Agreement, insured will pay that attorney's fees and other collection costs (including collectors' fees) if and to the extent permitted by applicable law (20% of amount due in Florida).

17. Agent or Broker. The Agent or Broker named on the front of this Agreement is neither authorized by LENDER to receive installments payable under this Agreement nor is authorized to make any representations to insured on LENDER's behalf (except to the extent expressly required by applicable law).

18. Amendments. If the insurance contract has not been issued at the time of the signing of this Agreement, and if the policies being financed are assigned risk policies or policies listed in a state fund, the policy numbers, if omitted herein, may be inserted in this Agreement after it has been signed (Maryland – policies must show 'Binder,' cannot be blank).

19. Effective Date. This Agreement will not go into effect until it is accepted by LENDER in writing.

20. Limitation of Liability. Insured recognizes and agrees that LENDER is a lender and not an insurance company and that LENDER assumes no liability as an insurer hereunder. LENDER's liability for breach of any of the terms of this Agreement or the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of LENDER's gross negligence or willful misconduct.

21. Governing Law. The law of the State of the insured's residence shall govern this Agreement, except, for Maine insureds this contract is governed by the laws of the State of New York. For Virginia insured's this contract shall be governed by the laws of the State of Virginia. Guam contracts will be governed by the laws of New York.

22. Signature and Acknowledgement. Insured has signed and received a copy of this Agreement. If the insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of the insured. All the insured's listed in any Policy have signed. Insured acknowledges and understands that insurance premium financing law does not require an insured to enter into a premium financing agreement as a condition of the purchase of any insurance policy.

23. Additional Insured. There is nothing in any Policy that would require Lender to notify or get the consent of any third party to effect cancellation of such Policy.

24. Privacy/Compensation. Information regarding our privacy policies and compensation arrangements with your insurance agent/broker may be found at http://www.imperialcredit.com/privacy.

IFISSoloA(9710)                                                                          Page   2   of   3

MAY. 5. 2010  2:59PM      BARKSDALE BONDING & INSURANCE                              NO. 0845    P. 3

| Policy Number and Prefix (Itemized) | Place (X) If Not Authorized (See #3 below) X | Full Name of Insurance Company and Name and Address of Policy Issuing Agent or Company Office To Which Premium is Paid and Notices are Sent | Type of Policy Premium | Audit Info* | Earn % Minimum | Term in Mos. Cov. By Prem. | Effective Date M D Y | Policy Premiums |
|---|---|---|---|---|---|---|---|---|
| | | C: Great American Insurance Co | UMB :0 | | 25.00 | 12 | 05/01/2010 | 54,826.00 |
| | | C: Hartford Steam Boiler Inspection & Insurance | B&M :0 | | 0.00 | 12 | 05/02/2010 | 9,266.00 |
| | | C: Great American Insurance Co | EQP :0 | | 0.00 | 12 | 05/01/2010 | 4,263.00 |
| | | C: Ironshore Specialty Insurance Co | PRP :0 | | 25.00 | 12 | 05/06/2010 | 114,000.00 |
| | | P: Westrope & Associates | Policy Fee | | | | | 7,000.00 |
| | | | Stamp Tax | | | | | 302.50 |
| | | | State Tax | | | | | 4,840.00 |
| | | | Surcharge Fee | | | | | 5,700.00 |
| | | C: Nationwide Agribusiness Ins Co | AUT :0 | | 0.00 | 12 | 05/01/2010 | 81,629.00 |
| | | C: Nationwide Agribusiness Ins Co | GNL :0 | A | 0.00 | 12 | 05/01/2010 | 13,823.00 |

| (AR=ASSIGNED RISK), (A=AUDITABLE), (LS=LOSS SENSITIVE) | TOTAL PREMIUMS (Record in "A") | 275,251.50 |
|---|---|---|

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF BROKER OR AGENT

3.    Warrants that it is the authorized Policy issuing agent of the insurance companies or the broker placing the coverage directly with the insurance company on all the Policies scheduled except those indicated with an "X" above.

4.    Warrants that there are no policies included in this Agreement which are subject to audit, report of values, retrospective rating, or minimum earned premium, except as indicated below, and that, if there are any, the deposit or provisional premium thereon is not less than the anticipated premium to be earned for the full term of the policy.
      Policy No.(s):_____Minimum earned premium, if any: $_____

5.    Warrants that there are no assigned risk policies in the Schedule of Policies except as indicated in the Schedule of Policies.

6.    The Agent or Broker will hold in trust for LENDER any payments made or credited to the insured through the Agent or Broker, directly, indirectly, actually or constructively, by any of the insurance companies listed in the Schedule of Policies and will pay the monies to LENDER upon demand to satisfy the then outstanding balance hereunder.

7.    The Agent or Broker will promptly notify LENDER in writing if any information on this Agreement becomes inaccurate.

8.    Warrants that all material information concerning the insured and the policies necessary for Lender to cancel the policies and receive the unearned premium has been disclosed to Lender.

9.    There is nothing in any Policy that would require Lender to notify or get the consent of any third party to effect cancellation of such Policy.

PFSForm0210                                                                                                                              Page  2  of  3